Good morning, honors. May it please the court, my name is Shaolin Park and I represent David Kuba, the plaintiff of Heli in this case. The legal principles applicable to our Fourth Amendment claim are not complex, nor are the subject of much of the dispute between the parties. The issue here is whether the search warrant that was issued for Mr. Kuba's home and computer was supported by a particularized probable cause. In order for the facts, in order for there to be probable cause, the facts must be particularized to the person and the place you search. This court, in both Lacey and citing to Weber, stated that the evidence that a defendant has ordered child pornography is insufficient to establish probable cause to believe that the defendant possessed child pornography. Something more is needed, and that's what this court has always demanded. Now what more is needed here? He subscribed and received child pornography. Your Honor, I'm sorry, he did not receive child pornography. There's no evidence of that stated in the affidavit. The only facts that are particularized to Mr. Kuba was that at one time he made one payment of $79.99 to JetPay, which was billed as AdSoft, and that he had current access to the Internet. JetPay, AdSoft, was in itself not a child pornography site. It was a processing site for credit cards, much like PayPal is used by other types of websites on the Internet. Wasn't there proof in the record that this particular payment would have been for child pornography, whether he received it or not, but it was for that? There was an allegation that he could have obtained child pornography based upon the order through AdSoft, but there's no indication in the record that he ever received any type of child pornography. That site alone wouldn't have provided him with any images. Well, certainly there's a very strong inference. It just seems to me that the ICE people were pretty thorough in the way they tracked this down. It wasn't something that the government initiated, which happens so often. All that the government did, as far as Mr. Kuba's case, was to establish in the affidavit that he had ordered or had the potential to order child pornography. There's nothing else in the affidavit that is established as to Mr. Kuba other than he had continuous Internet access. Well, they followed the track of the money and the e-mails and the name of these different groups. They did that as to phase one of the operation, but they never did that in regards to Mr. Kuba. In phase one, they were able to track the fact that the person who went through AdSoft then got a confirmation e-mail, which then would have allowed them to be provided the link to then access child pornography. And then they were also able to verify in that phase one of the operation that those people actually did in fact access and downloaded images, and they were able to determine the times and when they looked at those images. We don't have that in Mr. Kuba's case. And at no point during that phase one of that investigation was Mr. Kuba ever implicated. His name was not obtained from the numerous records that the agents obtained from the servers hosting child pornography. Mr. Kuba was not found to have downloaded any images from that child pornography website. What's notable about phase one was that the agents learned that not everyone who paid to access the child pornography site accessed it. About 10% of the 230 people that they searched as a result of phase one did not in fact end up possessing child pornography. Does 90% represent more than a fair probability? It does, Your Honor, but there still needs to be particularized facts as to Mr. Kuba. Why? Because this court has held in Weber that it is not enough to simply possess or to order child pornography in order for there to be a finding of probable cause. There has to be something more. There has to be additional affirmative steps. We don't have that in Mr. Kuba's case. Now, do we look at whether the magistrate in good faith looked at what was presented and determined drawings and infants that there was probable cause? Now, do we go beyond that and find that the magistrate was unreasonable? I think, Your Honor, the standard is whether the magistrate's issuance of the warrant is reviewed for a substantial basis supporting the probable cause. The good faith exception, we would argue, is not applicable in this case for several reasons. First, the judge necessarily deferred the affidavit's belief that there was probable cause. She assumed that. This is so because the warrant lacks sufficient facts for the judge to have made her own determination that probable cause existed. Too much of the information in the affidavit pertained to other people. It didn't pertain to Mr. Kuba. And Mr. Kuba didn't fit any profile or typology of a collector of child pornography. In fact, it could be argued that because he never continued to order through ADSOF, that he was not a collector. No, it didn't. There was something in the affidavit where the agent said that Mr. Kuba fulfilled the profile. The agent made a conclusory statement that he did fulfill the profile. But the agent's entitled to express an opinion. He is required to express an opinion. He listed those factors that came to a conclusion. But we would submit that the information of the affidavit making that conclusion was improper as to Mr. Kuba because it fails to adequately explain how he fit into that profile. The facts in the affidavit do not support the conclusion that he fit into that profile. He made a one-time payment to ADSOF, which was not a child pornography site. It was simply, the most you could infer, it was simply an order to obtain it. The profile indicates that child pornographers have a need to gather tons of child pornography. A one-time, 20-day access to a pornography site does not seem to follow that conclusion. His failure to renew his membership undermines that conclusion that he fits in that profile. I'm puzzled here because the statute doesn't prohibit continuing possession. I mean, if he had possessed it for 20 days and gotten rid of it, wouldn't that still constitute a violation of the statute? Perhaps, Your Honor. I do believe that. And the government argues that, as you say, he hit the delete button and gotten rid of it, but the computer, in fact, retains records of what was on the computer earlier. And so the search was at least in part justified, according to the government's position, because it could provide evidence of that previous point-in-time possession. But this court has held in Weber and Lacy that simply ordering child pornography in and of itself does not establish probable cause. All we can infer from this affidavit as to the facts pertaining to Mr. Kuba is that he made a purchase on a website that would have allowed him to access child pornography. We don't have anything more than that. We have this statement that there's a 90 percent probability that it was ordered. But that's not particularized as to him. The agents never followed through on their obligation to find out more information. They relied upon stale information from the phase one of the affidavit. That investigation began in October of 2005. The link between the AdSoft billing and the child pornography site was established for a short period of time, and that was only established for February of 2006. Mr. Kuba used JetPay in June of 2006, months after that was established by the affidavit. Moreover, the warrant didn't even issue until May 25 of 2007. And all the agents did, based upon that, was to confirm that he had Internet access. Thank you. If you want to save a few seconds, please go ahead. Thank you. May it please the Court, good morning. My name is Amy Olson. I'm an assistant U.S. attorney here in the District of Hawaii, and I represent the appellee in this matter. I'd like to begin by addressing the defense argument that there was no evidence here that this subscriber to a child pornography website actually accessed and downloaded any child pornography. That argument has been specifically rejected by this Court in its en banc decision in the Gord case in 2007. This Court said in 2007 in Gord that it is common sense that a subscriber to a child pornography website is going to take advantage of a subscription and access the child pornography. So that argument has already been rejected. With respect to the defense reliance on Weber, I think there are two very significant distinctions between this case and Weber. One is that Weber involved a delay of two years, and the other is that Weber was not computerized child pornography. Weber involved a postal intercept of a parcel. So in Weber, the Court could not rely, as it can here, on the long memory of computers to retain evidence of child pornography. So I think in this case, just like in Gord, we have this triad of solid facts that the Gord case relied on. The fact that we have firmly established that illegal CP was a child pornography website, the defendant subscribed to it, and then the long memory of computers. Those were the triad of solid facts that the Gord case relied on. They're also present here. Can you kind of explain to us, it's slightly complicated in this case, what was ordered, where you went to pay. So could you just kind of trace that whole sequence for us? Yes, Your Honor. The way I understand the affidavit is that there was a website that called itself Illegal CP. And on the initial banner page that a person would see when they accessed the website, they would have access to free images of child pornography that were explicitly described in the affidavit. So they could see some free preview images. And then they could also read an ad that said there, you're about to access the best child pornography on the Internet, or something to that effect. Then they would click join now. And then they'd go to a second page where the subscriber would have to enter his name, his address, his email address, his credit card information in order to subscribe. And then there's a serial number. Now Mr. Kuba did that. That's correct. I believe the affidavit establishes that Mr. Kuba did that by virtue of the JetPay records that were seized from the payment processor that showed that he, the payment records showed not only his name but his physical address, his email address, the $79.99 amount billed that was billed to a company called AdSoft. And then also the payment record had the phrase term 37407, which was consistent with the agent's understanding of how a person was granted access. When all these subscribers who were actually approved for access to the website always had or almost always had this term plus five digits in the payment records or in the email they received. Now did AdSoft process anything that was not child pornography? According to the information the government had, no. The agents went on, there was an AdSoft website that purported to offer some software for the price of $79.99. And on three occasions the ICE agents went to that website and tried to click on that to buy it and nothing happened. And that was up until, it was in March and April of 2006 and this defendant subscribed on June 4th of 2006. Okay, thank you. Any further questions? Thank you, Your Honor. Thank you. Good morning. Your Honor, if I may take a brief moment to distinguish the Gord case. In Gord there was an actual website that they could show that the defendant had actually entered and on that website there were images. All the government showed here was that Mr. Krupa had a one-time non-renewed bill to AdSoft that might have provided him access to a child pornography site. The government doesn't know if that is what he accessed. His behavior was not continuous like it was in Gord and the connection between AdSoft and access to child pornography was supported by an agent's inference, not something that was demonstrated. In our case the AdSoft to the child pornography was supported by an inference. In Gord there was no inference. That was what the defendant was looking at. So I think the Gord case is distinguishable from the facts of this case and this case is more in line with the Weber decision. Just because a Weber decision occurred with the mailing doesn't mean that it doesn't have merit today. Mr. Krupa may at the most you can infer that he may have placed an order. Simply placing an order does not establish probable cause according to the court in Weber and something more needs to be established. They weren't able to establish that he fit into a collector profile by the facts that I've already argued. Thank you very much. The matter is submitted. And now we come to the next case. Nader versus Cronin.
judges: Fletcher B. , Pregerson, Clifton